UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LISA A. ROBERTS | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:19-CV-086 JD |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Lisa Roberts applied for social security disability insurance benefits, alleging that she has been unable to work since October 11, 2012. The ALJ found that she has several severe impairments including degenerative disc disease of the lumbar spine with osteoarthritis, arthritis in her right shoulder with a rotator cuff tear, fibromyalgia, anxiety, and depression. The ALJ determined that Ms. Roberts was capable of light work with some additional limitations. Based on the Vocational Expert's testimony, the ALJ found that Ms. Roberts was unable to perform any past relevant work but could find other jobs in the economy including work as a school bus monitor, counter clerk, and investigator dealer accounts. (R. 95). Ms. Roberts argues that, in formulating her residual functional capacity, the ALJ improperly evaluated her treating physician's opinion and erred in weighing her subjective symptoms. The Court agrees that the ALJ improperly evaluated Ms. Roberts' treating physician's opinion and, therefore, remand is required.

## I. FACTUAL BACKGROUND

Prior to the onset of her disability, Ms. Roberts worked at a manufacturing plant for ten years before it closed and then worked as a crane operator and shipping/receiving manager from

1

2008 to 2012. (R. 922). In 2012, Ms. Roberts was diagnosed with bulging discs in her back and began to see a pain management specialist for those problems. (R. 495, 515). She continued to experience persistent and chronic back pain for several years. (R. 495, 497, 480). In 2015, she also started to experience shoulder and hip pain. (R. 480, 526). For several years, Ms. Roberts completed physical therapy including aquatic therapy, which provided her with some pain relief. (R. 473, 479, 481, 526, 769, 896). In June of 2015, Ms. Roberts' medical records show that she began experiencing pain throughout her whole body, which was aggravated by any movement. (R. 476). She indicated to her treating physician, Dr. G. Larsen Kneller, that all movements were painful and that she was experiencing tenderness in all of her joints. *Id*. She also told her pain specialist, Dr. Kazi, that physical activity, exertion, weightlifting, and laying down all caused her pain. (R. 526). Dr. Kazi asked her to continue her physical therapy and prescribed her Lyrica to help manage the pain. (R. 528).

In December of 2015, Dr. Kneller referred Ms. Roberts to Dr. Domingo, a rheumatologist, for the pain she was experiencing all over her body. (R. 542). In her notes, Dr. Domingo stated that Ms. Roberts described the pain as severe and worsening, that Ms. Roberts experienced increased pain after cleaning houses (her work activity at the time), and that her symptoms were relieved by warm soaks and water therapy. *Id*. At this appointment, Dr. Domingo found Ms. Roberts to have multiple tender points (18/18), diagnosed her with fibromyalgia, and started her on Cymbalta. (R. 545). At the end of her medical note, Dr. Domingo indicated that Ms. Roberts would have to return to her primary care physician for treatment as she would not be able to follow Ms. Roberts' care on a regular basis. *Id*. At her two-month check-up following this diagnosis, Ms. Roberts indicated that she was still experiencing

widespread pain that was triggered by repetitive activity and that she had stopped taking Cymbalta because it caused her to suffer from headaches. (R. 551).

Ms. Roberts' problems with her back and fibromyalgia continued through 2016 and 2017. In May of 2016, in an appointment with Dr. Kneller, Ms. Roberts reported experiencing an ongoing pattern of pain throughout her body that was persistent, severe, and worsening. (R. 769). In the fall of 2016, she was directed by Dr. Kazi to complete two treatments of physical therapy per week for a month to help manage her pain. (R. 652). In the spring of 2017, she continued to be treated for chronic low back and bilateral hip pain, which was noted to be constant but controlled with her pain medication. (R. 738). She continued to attend physical therapy appointments in 2017 since she was still experiencing generalized pain with all active movements. (R. 840). In June of 2017, Ms. Roberts reported to Dr. Kneller that in the previous two months she experienced acute fatigue and Dr. Kneller noted that the likely cause of "most if not all of her complaints" was fibromyalgia. (R. 879).

At the hearing with the ALJ on October 25, 2017, Ms. Roberts testified that she had problems with her hips and that it hurt for her to sit because her lower back had herniated discs and degenerative discs. (R. 61). She told the ALJ that after being diagnosed with fibromyalgia, she was unable to take the prescribed medication for fibromyalgia because they made her feel sick and gave her headaches. (R. 64). Ms. Roberts stated that the pain caused by her back and hips prevented her from sleeping and that prescription medications do not help her. (R. 68). After hearing testimony from Ms. Roberts and the Vocational Expert, the ALJ made the following residual functional capacity finding:

> After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She can occasionally balance,

stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme heat, extreme cold, moving machinery, unprotected heights, and wet slippery surfaces. The claimant can occasionally reach in all directions, including overhead, bilaterally; She can frequently handle/finger bilaterally, and can frequently push/pull and operate foot controls bilaterally. . . . Last, the claimant can occasionally adapt to rapid changes in the workplace.

(R. 24-25). The ALJ ultimately found that Ms. Roberts was not disabled. The Appeals Council declined review, and Ms. Roberts filed this action seeking judicial review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before

affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the ALJ must then

5

assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Roberts argues that the ALJ's decision should be remanded for several reasons. First, she argues that the ALJ's opinion weight analysis is not supported by the record most notably by failing to give her longtime treating physician's opinion controlling weight. Second, she argues that the ALJ erred in evaluating the mental opinion evidence and in translating moderate limitations in concentration, persistence, or pace into a hypothetical and RFC. Finally, she argues that the ALJ rendered an erroneous symptom determination. The Court agrees that the ALJ's opinion weight analysis was not supported by the record and remands for that reason. Upon remand, the Court also directs the Commissioner to reevaluate Ms. Roberts' subjective symptoms and her associated RFC.

### A. Treating Physician Opinion

From 2012 to 2017, Ms. Roberts was seen by treating physician Dr. Kneller on a regular basis. In fact, the record contains thirty-five reports from Dr. Kneller on Ms. Roberts' health during this time period. [Exhibits 2F; 22F]. Dr. Kneller treated Ms. Roberts for a wide variety of complaints including menopause, skin rashes, skin lesions, well-woman health appointments,

6

and persistent pain throughout her body. Dr. Kneller also made several referrals to other physicians to help Ms. Roberts with her pain including to a neurologist, a rheumatologist (Dr. Domingo), and a pain management specialist who in turn referred her to a physical therapist (Mr. Singh). (R. 473, 526, 542, 648-650, 833).

In 2016, Dr. Kneller opined that Ms. Roberts could only stand for 15-20 minutes and could only sit for 45 minutes due to her diagnosed fibromyalgia and lumbar disc disease. [Exhibit 11F]. He also limited Ms. Roberts to occasionally reaching in all directions and lifting less than five pounds due to her torn rotator cuff. *Id*. Despite the consistent medical attention Ms. Roberts received from her treating physician, the ALJ stated that Dr. Kneller's opinion was given little weight for the following reasons:

> Again, the claimant does not have consistent deficits with strength or sensation; therefore, the limited standing and sitting is not necessary. In addition, she was diagnosed with fibromyalgia and did have a significant number of positive tender points during her rheumatology consultation, but she does not regularly treat for her fibromyalgia with the rheumatologist.
>
> Further, she regularly had a negative straight leg raising and was generally able to complete many orthopedic maneuvers, including during the consultative examination. She does have a right rotator cuff tear, but her only treatment is conservative, namely physical therapy. She has not had surgery on her right rotator cuff. Furthermore, there is more than one note in the record mentioning the claimant was cleaning houses during parts of her alleged disability period. This included cleaning walls. She also used the pool for exercise at one of the homes where she worked.

(R. 29). But these are insufficient reasons for assigning "little weight" to the opinion of Ms. Roberts' treating physician, Dr. Kneller, regarding her physical impairments.

First, in her opinion, the ALJ did not note that Dr. Kneller was Ms. Robert's treating physician or note how long he had been treating Ms. Roberts. The ALJ references Dr. Kneller's opinion in the section where she discusses Ms. Roberts' medical source statements but fails to acknowledge him as her longstanding treating physician. (R. 29). The Commissioner argues that

7

the ALJ cited to many reports from Dr. Kneller and that the ALJ discounted his opinion due to the unremarkable physical examinations, Ms. Roberts' routine treatment, and her daily activities. [DE 23 at 12]. But the Commissioner also made references to the many referrals Dr. Kneller made to pain specialists, physical therapists, and a rheumatologist in order to help Ms. Roberts with her pain. Thus, while Dr. Kneller's own exams may have been unremarkable, he recognized that Ms. Roberts' symptoms warranted referrals to other specialists who could better manage and address the problems she was experiencing. The records from these referred physicians are consistent with Dr. Kneller's findings: Ms. Roberts experienced pain initially in her back and hips, but later the pain spread all over her body. The records also demonstrate that her pain did not improve over time. [Exhibits 4F; 6F; 7F; 13F; 14F; 19F]. Notably, in September 2016, after examining Ms. Roberts, Dr. Kneller stated that "several of her complaints are chronic and ongoing, and not sure they'll ever be resolve(d) (back pain, myalgia)." (R. 767).

Second, the ALJ failed to adequately explain the distinction between Ms. Roberts' strength or sensation results with her limitations in sitting or standing. This fails to build a logical bridge between the evidence in the record and the ALJ's conclusion. *Terry*, 580 F.3d at 475. The ALJ found that Ms. Roberts did not have deficits with strength or sensation, she was not being treated regularly for fibromyalgia, she was generally able to complete many orthopedic maneuvers, and she was cleaning houses and swimming in a pool during the alleged disability period. (R. 29). But the record indicates that Ms. Roberts was swimming in the pool of a house she was cleaning in 2013, which was *prior* to the onset of her fibromyalgia. (R. 502). Moreover, Ms. Roberts participated in aquatic therapy for several years to help manage her pain. (R. 526, 542, 648, 654). "A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity

for a longer period given the pain involved." *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004). Yet, the ALJ cited these activities to support the low weight she gave to Dr. Kneller's opinion demonstrating that she "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Id*. at 755.

Third, the ALJ also impermissibly "played doctor" because there was no testimony or medical evidence indicating that simply because Ms. Roberts often had a full range of motion that she could not suffer from further limitations—such as the need to alternate between sitting and standing on account of pain and/or the need to be limited in the total time spent sitting or standing/walking. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). In crafting Ms. Roberts' RFC, the ALJ found that additional restrictions were warranted in addition to limiting Ms. Roberts to light work on account "of her hips, right shoulder and back." (R. 29). But the ALJ failed to explain why having a full range of motion or 5/5 strength is inconsistent with the diagnosis of fibromyalgia or Ms. Roberts' testimony of disabling pain. In fact, in Ms. Roberts' first medical consultative exam in 2015, she was "unable to stoop or squat completely due to back pain; however she was able to walk heel to toe and tandemly without difficulty." (R. 26). In her second consultative exam in 2016, she was able to stoop and squat with no difficulty but indicated that she was taking a narcotic for her pain. [Ex. 10F]. The ALJ failed to observe that despite oftentimes having a full range of motion or 5/5 strength that Ms. Roberts still suffered from terrible chronic pain, requiring her to take pain medication and undergo physical therapy. Ms. Roberts' treating physician, Dr. Kneller, noted that she was suffering from chronic

pain and this finding was consistent with her diagnosis of fibromyalgia by the rheumatologist and her long history of physical therapy to help manage her pain.

Finally, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). When considering Ms. Roberts' medical source statements, the ALJ also gave her rheumatologist's opinion little weight and her physical therapist's opinion partial weight for the same reasons she discounted Dr. Kneller's opinions. The ALJ mischaracterized the record by stating that Ms. Roberts was not being regularly treated for fibromyalgia with a rheumatologist, when the record shows that after diagnosing Ms. Roberts with fibromyalgia, the treating rheumatologist, Dr. Domingo, specifically stated that she would not see Ms. Roberts on a regular basis and that she would have to follow up with her primary care physician—Dr. Kneller. (R. 545). Notably, Dr. Domingo also limited Ms. Roberts to lifting less than 10 pounds, only standing for 30 minutes, and limiting her walking to 30 minutes. [Exhibit 25F].

Additionally, after assisting her in late 2016, Ms. Roberts' physical therapist, Mr. Singh, opined that she could not stand or sit for 6-8 hours due to poor endurance, that she could not reach overhead, that she could only occasionally reach in all other directions, and that she could lift or carry less than five pounds. (R. 725-26). He also noted that Ms. Roberts did not have any difficulty with ambulation and had no weight-bearing restrictions. *Id*. When weighing Mr. Singh's opinion, the ALJ stated, "I do give the latter part of the opinion great weight, but the former part of the opinion (e.g. no standing/sitting for 6-8 hours, no overhead reach, etc.) little weight for the same reason little weight is given to Dr. Kneller's opinion stated above." (R. 29). Thus, the ALJ gave more weight to the part of Mr. Singh's opinion where Ms. Roberts did not

have significant physical limitations and rejected the part of his opinion that was consistent with her other physicians' opinions. "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). "Even though a physical therapist is not an acceptable medical source for determining a claimant's impairments, this evidence may be used to show the severity of an impairment and how it affects a claimant's ability to function." *Thomas v. Colvin*, 828 F.3d 953, 961 (7th Cir. 2016). Again, the ALJ did not connect this weighting or her reasoning to the medical record and failed to explain how the opinion was not well supported especially since Mr. Singh's Medical Assessment-Questionnaire Form also stated that Ms. Roberts would need to lie down during the day due to her pain and poor endurance. (R. 725).

In not giving controlling weight to Dr. Kneller's opinion, the ALJ did not explain why the opinion was not well supported or why it was inconsistent with other evidence in the record. "[M]ore weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ also gave little weight to the opinions of both Mr. Singh and Dr. Domingo's for the same reason that she gave little weight to Dr. Kneller's opinion, despite there being consistency between the opinions and the record. Thus, "[t]he ALJ also failed to consider the consistency of Dr. [Kneller's] opinion with the opinions of other treating, examining, and reviewing medical sources." *Gerstner*, 879 F.3d at 263. Remand is required for a proper weighting of Dr. Kneller's opinions in the context of the record and other medical opinions.

### B. Plaintiff's Subjective Complaints

Ms. Roberts also argues that the ALJ failed to properly evaluate her subjective symptoms and rendered an erroneous symptom determination. In her opinion, the ALJ found that Ms. Roberts' impairments could reasonably cause the alleged symptoms, but that her statements as to the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence or other evidence in the record. (R. 25). Ms. Roberts argues that the ALJ selectively presented certain details of her life to undermine her subjective complaints. [DE 20 at 11]. For example, the ALJ discounted Ms. Roberts' claimed inability to work based on her cleaning houses at different points in time, cleaning walls despite shoulder pain, and swimming in pools for exercise. (R. 27, 29). On remand, the Court invites the ALJ to reconsider her assessment of Ms. Roberts' complaints in light of the full record.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). Importantly, the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) The individual's daily activities;
> (ii) Location, duration, frequency, and intensity of pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) Type, dosage, effectiveness, and side effects of any medication;
> (v) Treatment, other than medication, for relief of pain or other symptoms;
> (vi) Other measures taken to relieve pain or other symptoms;
> (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8.

The record demonstrates a long history of pain in her lower back and hip prior to Ms. Roberts developing fibromyalgia, which resulted in her experiencing pain all over her body. In fact, Ms. Roberts was prescribed narcotics for her pain, referred to physical therapy to help manage it, and was unable to take two prescription medications—Lyrica and Cymbalta—to help address her fibromyalgia. (R. 65, 530, 551). Here, "the record is replete with instances where [Ms. Roberts'] sought medical treatment for pain symptoms related to her physical impairments . . . ." *Clifford*, 227 F.3d at 872. At different points in her opinion, the ALJ notes that Ms. Roberts denied having any medication side effects, which is true but only because Ms. Roberts had stopped taking the prescription medication for fibromyalgia that gave her headaches and made her feel nauseous. (R. 65, 530, 551). Notably, the ALJ stated the following:

> [Ms. Roberts] worked with an employment specialist for vocational rehabilitation in 2016 and 2017. She inquired and applied for multiple jobs, including yoga instructor training (Exhibits 15F; 27F; 28F; 29F). It appears she was cleaning houses at one point (Exhibit 28F/2) and there was a physical therapy note stating she was cleaning walls in October 2016, despite shoulder pain (Exhibit 14F/48). Although this is not the sole factor in determining the claimant's residual functional capacity is less than light, it was considered.

(R. 27). The ALJ points to these activities to support the contention that Ms. Roberts is capable of light work with some limitations. She points to Ms. Roberts' "daily activities as substantial evidence that she does not suffer disabling pain. This is insufficient because minimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity." *Clifford*, 227 F.3d at 872 (7th Cir. 2000) (*see Thompson v. Sullivan*, 987 F.3d 1482, 1490 (10th Cir. 1993)).

Moreover, the ALJ failed to address other parts of the record where Ms. Roberts stated that her pain increases after activities such as cleaning homes (Exhibits 6F, 14F at 694), that she was rejected from a potential new job because she was unable to perform

all of the required physical movements (R. 710), and that she has short-term memory problems, which prohibited her from pursuing a yoga instructor training course. (R. 710). The record also indicates that around the time Ms. Roberts was cleaning homes, she stated she was frustrated by her current financial situation and need for employment. (R. 933). Regardless, a "job search, on its own, is not evidence that she embellished her pain, because a claimant who looks for work after claiming a painful disability may have 'a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.'" *Gerstner*, 879 F.3d at 265 (citing *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016)).

Finally, while the ALJ found Ms. Roberts' fibromyalgia to be a severe impairment and found her capable of light work, she did not provide any functional limitations that accommodated her chronic pain symptoms. Ms. Roberts testified that while she can do certain activities like grocery shop, housework, drive her car, and mow her lawn, she is not always capable of performing those activities or, when she does, they cause her pain. (R. 79-82). Therefore, on remand, the ALJ must conduct a reevaluation of Ms. Roberts' complaints of pain and the full range of medical evidence in the record.

## V. CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 18, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court